IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Ophelia De'Lonta, )
    Plaintiff, )
)
v. ) 1:09cv1167 (TSE/TCB)
)
Eddie L. Pearson, et al., )
    Defendants. )

## MEMORANDUM OPINION

Ophelia De'Lonta, a Virginia inmate now proceeding by appointed counsel, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging sexual assault and extortion by a corrections officer. On April 23, 2010, defendants Eddie Pearson and Anthony Scott, through counsel, filed a Motion for Summary Judgment, arguing that the complaint should be dismissed both on the merits and because plaintiff failed to exhaust her administrative remedies. Plaintiff, by counsel, filed an Opposition to Defendants' Motion for Summary Judgment on June 2, 2010. For the reasons that follow, defendants' Motion for Summary Judgment must be granted.

### I. Background

A. Factual Background

Ophelia De'Lonta is a pre-operative transsexual who has received psychological counseling and hormone therapy for gender identity disorder from the Virginia Department of Corrections while she has been incarcerated.[1] See Am. Compl. 2, ECF No. 10. According to

---

[1] Gender identity disorder, also known as gender dysphoria or transsexualism, is characterized by a feeling or being trapped in a body of the wrong gender. See De'Lonta v. Angelone, 330 F.3d 630, 632 (4th Cir. 2003). Thus, although anatomically male, plaintiff identifies as a woman, and female pronouns are used in this Opinion to refer to her. See Meriwether v. Faulkner, 821 F.2d 408, 401 n.1 (7th Cir. 1987), cert. denied, 484 U.S. 935 (1987) (using female pronouns to refer to transsexual plaintiff). See De'Lonta v. Fulmore, Case No. 1:10cv838 (TSE/JFA) (E.D.V.A. Sept. 20, 2010).

De'Lonta's allegations, she met Sheree Anderson, a correctional officer, at Powhatan Correctional Center (PCC) in 2007. Id. De'Lonta tried to avoid Anderson after Anderson "expressed abnormal interest towards Plaintiff and her trans-sexual condition," made "various verbal sexual advances toward Plaintiff," and tried to look at De'Lonta "in a nude or semi-nude condition" on more than one occasion. Id. at 2-3. De'Lonta asked Anderson to stop, but Anderson responded with anger, threatened to file false charges against De'Lonta or have her "friends" attack De'Lonta, and did not alter her behavior. Id. at 3.

On March 11, 2009 at approximately 11:30 PM, De'Lonta entered the laundry room to check on her clothes. Id. at 4. Anderson allegedly approached De'Lonta from behind, pushed De'Lonta against the dryer, reached between De'Lonta's legs and forcefully took hold of De'Lonta's private area while saying "now with a little incentive, you will do what I tell you to do." Id. De'Lonta ran from the laundry room into her cell and locked the door. Id. at 4-5. Anderson came to De'Lonta's cell numerous times that night and eventually asked for money. Id. at 5. When De'Lonta told Anderson that she had no money, Anderson yelled "stop lying bitch" and threw mail into De'Lonta's cell, which contained two money receipts for deposits to De'Lonta's account. Id. Anderson again threatened to file false disciplinary reports against De'Lonta or have her "friends" hurt De'Lonta. Id. She then told De'Lonta to write a letter to her lawyer asking the lawyer to transfer $1,100 from De'Lonta's account to Anderson's account. Id. at 6. Anderson said she would give De'Lonta her banking information, and to avoid further confrontation, De'Lonta agreed. Id.

The next morning, De'Lonta told her counselor Barry Marano about her interactions with Anderson. Id. Marano contacted De'Lonta's psychologist Jena Porterfield, who advised De'Lonta to talk with Internal Affairs officers. Id. De'Lonta alleges that she met with Internal

Affairs Agent Poe and Agent Serrano and told them "all that had transpired regarding officer Anderson," see id., but Agent Poe denies that, and states "[n]owhere in the written statement or during the course of my interview with the offender, did De'Lonta mention a sexual assault on De'Lonta by Anderson, on March 11, 2009 or any other date." See Poe Aff. 2, ECF No. 21-3. Agent Poe told De'Lonta to "go along with" Anderson's plan and to copy Anderson's banking information to give to Poe. See Am. Compl. 7, ECF No. 10. Because De'Lonta felt she had no choice, she agreed to work with the agents. Id.

De'Lonta also discussed this situation with her psychologist, J. Porterfield. See Porterfield Aff. 1, ECF No. 30-1. Porterfield states that she met with De'Lonta on March 12, 2009, and De'Lonta explained that "she had been struggling with reporting that a correctional officer (Officer Anderson) was demanding money from her." Id. at 1-2. At the same meeting, De'Lonta told Porterfield that Anderson "'touched her,' but declined to provide further details." Id. at 2. De'Lonta said that she was "worried about a fraternization charge" because of its potential impact on her parole status. Id. Porterfield met with De'Lonta again on March 16, 2009, and they discussed the situation concerning Anderson and the investigation. Id. Porterfield attests that De'Lonta made "no mention during this meeting of issues she was having as a result of inappropriate touching or sexual assault." Id.

De'Lonta further alleges that correctional officer Anderson gave De'Lonta her banking information and again told De'Lonta to write the letter to her lawyer for Anderson to mail. Id. De'Lonta wrote the letter and gave it to Anderson, but also copied the banking information to give to Agent Poe. Id. She gave the information to counselor Marano the next day, who gave it to Agent Poe. Id. The letter containing Anderson's banking information that De'Lonta gave to Agent Poe stated "Flush this after you finish with it or give it back to me. Let me read the letter

before you send it off. I'm so stressed out right now. I'm putting my trust in you, don't let me down." See Poe Aff. 3, ECF No. 21-3; Brief in Support, Ex. D at 6, ECF No. 21-4.

Agent Poe told De'Lonta that the letter she wrote to her lawyer had been retrieved from the prison mail, and that it "established the case against Officer Anderson." See Am. Compl. 7, ECF No. 10. De'Lonta states that Agent Poe told her that the investigation was ongoing and she should not discuss it with anyone, id. at 8, but Poe denies that he ever told De'Lonta not to file complaints or grievances during his investigation. See Poe Aff. 4, ECF No. 21-3. Poe also indicated that Anderson would not be working for the next week and would not have access to De'Lonta. See Am. Compl. 7, ECF No. 10. Anderson was reassigned to "duties that would not ordinarily cause her to come into contact with De'Lonta." See Brief in Support 6, ECF No. 21.

De'Lonta next saw Anderson when Anderson was driving the security vehicle outside the security fence and yelled at De'Lonta, who was in the recreation yard. Id. De'Lonta also received threatening letters from Anderson. See Am. Compl. 8, ECF No. 10. On another occasion, Anderson told De'Lonta to send money to a particular address and threatened to harm De'Lonta's mother. Id. at 9. De'Lonta reported these incidents to Agent Poe. Id. at 8-9. Agent Poe reassured De'Lonta that the situation was being handled, but would not discuss the details of the investigation. Id. at 9.

De'Lonta met with Porterfield on March 23, 2009, and they discussed "an encounter with the officer under investigation over the weekend, on the recreation yard." See J. Porterfield Aff. 2, ECF No. 30-1. De'Lonta explained that she was worried because the officer pulled out a shotgun during this encounter.[2] Id. De'Lonta did not mention any issues she was having due to an inappropriate touching or sexual assault. Id. Porterfield met with De'Lonta again on March

---

[2] When referring to this conversation in her affidavit, Porterfield refers to "the officer under investigation" and does not use Anderson's name explicitly.

30, 2009, at which time De'Lonta said she was stable. Id. A meeting scheduled for April 13, 2009 had to be canceled because Porterfield was sick, but De'Lonta met with Porterfield on April 17, 2009. Id. De'Lonta did not mention any issues arising from inappropriate touching or sexual assault at this meeting or the next two meetings, which were held on April 23, 2009 and May 4, 2009. Id.

De'Lonta talked with counselor Marano about her anxiety and fear arising from the situation with Anderson. See Am. Compl. 9, ECF No. 10. Marano told De'Lonta that he had informed De'Lonta's psychologist (Porterfield) about the situation, and that De'Lonta would be able to speak to Porterfield when she returned from medical leave. Id. at 10. Despite De'Lonta's requests, Marano would not disclose any information about the investigation or Anderson's employment status. Id.

Porterfield was on medical leave from May 8, 2009 until June 15, 2009, and De'Lonta did not request to speak with anyone in Mental Health during this time. See J. Porterfield Aff. 4, ECF No. 30-1. During their meeting on June 22, 2009, Porterfield asked De'Lonta about the complaint she filed relating to Anderson and specifically asked what "help" De'Lonta was seeking. Id. Porterfield claims that De'Lonta "could not articulate any emotional problems and was wholly disinterested in addressing this issue therapeutically," but that De'Lonta explained that she did not want to be patted down or searched by correctional officers. Id. On June 29, 2009, Porterfield met with De'Lonta again. Id. Counselors Marano and Hunter also attended the meeting, and De'Lonta agreed to see Marano (who would consult with doctors) if she needed any mental health treatment during Porterfield's upcoming maternity leave. Id. at 4-5. De'Lonta said she did not want to see another psychologist during that time, and she did not mention any sexual assault or inappropriate touching. Id. at 5. De'Lonta confirmed that she did not want to

see another psychologist during Porterfield's maternity leave at a meeting on July 9, 2009, and Porterfield explained the Refusal to Consent to Treatment form. Id. When Porterfield returned from maternity leave, she learned that De'Lonta had refused to meet with another psychologist, Mr. Runion, and that a Refusal to Consent to Treatment form was completed on July 21, 2009, but that De'Lonta refused to sign it. Id.

As a result of Agent Poe's investigation, officer Sheree Anderson was terminated by Warden Pearson on March 31, 2009 for fraternization. See Brief in Support 4, ECF No. 21. Agent Poe concluded that the allegation of extortion was unfounded, reasoning that "it would be highly unlikely that someone would give any handwritten information to someone they were trying to extort money from," and also that "the content and tone" in the note Anderson gave De'Lonta were "inconsistent with extortion" because the last sentence included "more of a plea and not a demand." See Poe Aff. 3, ECF No. 21-3. This conclusion is hard to square with the facts exposed by the investigation. Not only did De'Lonta give Agent Poe a letter written by Anderson that contained Anderson's banking information, but the letter that Anderson had asked De'Lonta to write to De'Lonta's lawyer asking him to transfer funds to Anderson's account was retrieved from the prison mailing system as a result of this investigation. See Am. Compl. 7, ECF No. 10. Moreover, Anderson admitted that she had "a personal relationship with De'Lonta and had asked De'Lonta to send her $1,200," but stated that she had never received any money from De'Lonta. See Brief in Support 4, ECF No. 21; Poe Aff. 2-3, ECF No. 21-3.

De'Lonta submitted an informal complaint on May 20, 2009, explaining that she had been sexually assaulted by Anderson in the laundry room and that Anderson had attempted to extort money from De'Lonta. See Am. Compl. 10, ECF No. 10. The response to the complaint indicated that it was "very delayed" and that Anderson was no longer employed at Powhatan. Id.

at 11; see also Brief in Support 4, ECF No. 21. De'Lonta explains that her complaint was not filed earlier because Agent Poe told De'Lonta that it would jeopardize the investigation.[3] See Am. Compl. 11, ECF No. 10. De'Lonta filed numerous grievances,[4] all of which stated that she had been sexually assaulted by Anderson and needed psychological treatment to cope with the incident. Id. at 11-12. Most of these grievances were dismissed as untimely filed. Id. at 12.

B. Procedural History

De'Lonta filed the instant complaint on October 16, 2009. By Order dated November 30, 2009, De'Lonta was directed to particularize and amend her complaint. De'Lonta filed an amended complaint on December 29, 2009, naming Sheree Anderson (former correctional officer at Powhatan Correctional Center), Eddie L. Pearson (Warden of Powhatan Correctional Center), and Major Anthony Scott (Chief of Security of Powhatan Correctional Center) as defendants. De'Lonta argues that the defendants are liable for the sexual assault and failure to terminate Sheree Anderson's employment, and for their failure to provide mental health treatment after the sexual assault.

By Order dated February 24, 2010, counsel was appointed for De'Lonta, and the Court issued the defendants the Notice of Lawsuit and Request for Waiver of Service of Summons. Defendant Sheree Anderson did not respond. Plaintiff filed a Motion for Extension of Time in Which To Serve Defendant, asking for an additional sixty (60) days to serve defendant Sheree Anderson, which was granted on June 28, 2010. On July 2, 2010, a summons was issued. The

---

[3] Agent Poe denies that he ever told De'Lonta not to file complaints or grievances during his investigation. See Poe Aff. 4, ECF No. 21-3.

[4] De'Lonta filed at least four informal complaints and two regular grievances. See Am. Compl. Ex., at 1, ECF No. 10-2; Am. Compl. Ex., at 1, ECF No. 10-4; Am. Compl. Ex., at 1, ECF No. 10-3; Am. Compl. Ex., at 1, ECF No. 10-5; Brief in Support, Ex. at 6, 8, ECF No. 21-5.

summons was returned unexecuted on July 22, 2010 because the United States Marshal could not locate defendant at the provided location. Specifically, the person at the provided address stated that Sheree Anderson did not live there, and the representative at the rental office for the building stated that Sheree Anderson was evicted in September 2009.

In the February 24 Order the Court advised plaintiff that if the Court was unable to effect service on a defendant and a defendant was not otherwise served within 120 days of filing, the defendant would be dismissed from the instant action without prejudice, pursuant to Fed. R. Civ. P. 4(m). Normally, when a defendant who was formerly employed by the Virginia Department of Corrections cannot be located at the address provided by the plaintiff in a pro se prisoner case, the Virginia Attorney General is asked to provide the last known address for the defendant under seal. The Notice and Waiver of Service of Summons is sent to that address and if the defendant does not respond, then the U.S. Marshal is directed to attempt formal service on the defendant at that address. Here, plaintiff is represented and yet to date, neither the Court nor plaintiff has been able to effect service on defendant Sheree Anderson. More than 120 days have passed since plaintiff filed this action. Therefore, defendant Sheree Anderson must be dismissed, without prejudice.[5]

Defendants Pearson and Scott filed a Motion for Summary Judgment and Brief in Support on April 23, 2010. On June 2, 2010, De'Lonta, through counsel, filed an Opposition to Defendants' Motion for Summary Judgment, in which counsel stated, "Until Defendant [sic] is granted discovery, i.e., Anderson's personnel file as well as any necessary follow-up discovery as to the contents thereof (including depositions regarding her hiring and supervision), the Court should not grant summary judgment as to this claim." See Opp'n to Mot. For Summ. J. 4, ECF

---

[5] It is worth noting that De'Lonta has stated a prima facie case that she was assaulted and extorted by Sheree Anderson, but this valid claim cannot be pursued in this action because Anderson cannot be served.

No. 27. Defendants noted that plaintiff's counsel has not filed a motion for discovery. See Reply to Opp'n 4, ECF No. 30. Accordingly, by Order dated January 31, 2011, plaintiff was given twenty days to attempt to obtain discovery in accordance with Federal Rule of Civil Procedure 37. Plaintiff's counsel filed a letter in response to the January 31 Order, explaining that "the relevant parties agree that no further discovery is necessary and would submit Defendants' Motion for Summary Judgment to the Court on the papers..." See Letter from Pl.'s Counsel, ECF No. 49.

Plaintiff's counsel also filed a Notice of Submission of Supplementary Exhibit to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Docket # 38), which included an affidavit by plaintiff.[6] Defendants' counsel filed a Motion to Strike that notice (Docket # 40), arguing that the notice should be stricken pursuant to Federal Rule of Civil Procedure 12(f) because it is irrelevant. Specifically, defendants noted that the affidavit did not mention defendant Major Anthony Scott or defendant Eddie L. Pearson. Plaintiff's counsel filed an Opposition to Motion to Strike (Docket # 43), which states that the affidavit "reiterates facts alleged in Plaintiff's Complaint, but in Affidavit form." Defendants are correct that the affidavit does not mention either of the remaining defendants and is thus irrelevant and subject to be stricken under Rule 12(f). Nevertheless, the Motion to Strike will be denied because the information in the affidavit is identical to information that is contained in the Amended Complaint, which has been fully considered.

---

[6] The affidavit states: "1. On March 13th + 14th, 2009, I advised the following people that Officer Anderson had physically assaulted me: Agent Vernon M. Poe, Miguel Serrano, Counselor Barry Marano, Jena Porterfield I advised psychologist Ryunion between March 20-April 25. 2. I did not file a written complaint in the form of an Informal Complaint or Grievance until May 09 because I was told not to by the following people because it would jeopardize the investigation: Agent M. Poe Agent Miguel Serrano."

## II. Standard of Review

Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is made and supported . . . [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). Where a genuine issue of material fact exists, summary judgment may only be awarded if the court assumes the facts as alleged by the non-moving party. See Moore v. Winebrenner, 927 F.2d 1312, 1313 (4th Cir. 1991) ("In reviewing a grant of summary judgment...we view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party."), cert. denied, 502 U.S. 828 (1991).

## III. Analysis

### A. Exhaustion

The parties dispute whether De'Lonta fully exhausted her claims administratively. See Brief in Support 2, ECF No. 21; Opp'n 2, ECF No. 27. The exhaustion requirement demands that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 92 (2006) (requiring complete exhaustion of correctional facility administrative remedies). De'Lonta, as a Virginia inmate, was required to exhaust the claims raised in the instant complaint in accordance with the Virginia Department of Corrections ("VDOC") grievance procedures. In particular, she must have complied with VDOC Department Operating Procedure ("DOP") 866, which provides multiple levels of administrative remedies in the form of inmate grievances. Per DOP 866-7.13, an inmate must first attempt to resolve any issues informally. Prison officials must respond to the inmate's complaint within fifteen days of receiving an informal complaint. See DOP 866-7.13. After seeking informal resolution, an inmate may file a regular grievance to the warden or superintendent. The grievance must be filed within thirty days of the underlying incident or occurrence. See DOP 866-7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available following the filing of a regular grievance. See DOP 866-7.15.

The record shows that De'Lonta filed at least four informal complaints and two regular grievances to request mental health treatment to help her cope with her anxiety and stress arising from the sexual assault by Sheree Anderson. See Am. Compl. Ex., at 1, ECF No. 10-2; Am. Compl. Ex., at 1, ECF No. 10-4; Am. Compl. Ex., at 1, ECF No. 10-3; Am. Compl. Ex., at 1, ECF No. 10-5; Brief in Support, Ex. at 6, 8, ECF No. 21-5. The earliest informal complaint De'Lonta filed was dated May 20, 2009, and it was rejected as untimely because it was "very delayed." See Am. Compl. Ex., at 1, ECF No. 10-2. The earliest regular grievance De'Lonta filed was dated June 2, 2009, and it was also rejected as untimely. See Am. Compl. Ex., at 1, ECF No. 10-3. De'Lonta appealed this decision, and it was upheld by the Regional Ombudsman. See Carson Aff. 3, ECF 21-1. De'Lonta explains here that she did not file any

informal complaints or grievances closer to the date of the sexual assault because Agent Poe advised her not to file anything while the investigation was ongoing. See Am. Compl. 11, ECF No. 10 ("The reason the complaint was not filed earlier is that Agent Poe told Plaintiff it would jeopardize the investigation of Officer Anderson if Plaintiff filed paperwork about what had happened."). Furthermore, it is undisputed that De'Lonta met with Internal Affairs officers on March 13, 2009, and that meeting marked the beginning of the investigation that resulted in the termination of Sheree Anderson's employment. See Am. Compl. 6-7, ECF No. 10; Poe Aff. 1, ECF No. 21-3. Therefore, it is clear on this record viewed in the light most favorable to the plaintiff that De'Lonta attempted to exhaust her administrative remedies, and even if De'Lonta failed in this effort, it was due to no fault of her own. Accordingly, her claims will be addressed on the merits.

B. Merits

De'Lonta argues that defendants Major Anthony Scott and Eddie L. Pearson are liable for failing to perform their duties, which resulted in her suffering extreme mental and physical anguish in violation of the Eighth and Fourteenth Amendments. See Am. Compl. 13-14, ECF No. 10. Specifically, De'Lonta argues that both defendants are liable for the sexual assault by Sheree Anderson and their failure to terminate Anderson's employment after the assault,[7] and that defendant Pearson is liable for the failure to provide mental health treatment after the sexual assault. The material facts as set forth in this Opinion are not in dispute. Because De'Lonta has

---

[7] In the Amended Complaint, De'Lonta argues that Sheree Anderson alone is liable for the sexual assault. See Am. Compl., ECF No. 10. De'Lonta asserts that Scott and Pearson are liable for their failure to perform their duties after they were informed of the sexual assault, and not the sexual assault itself. See id. Nevertheless, counsel for De'Lonta appears to argue that these defendants may be liable for the assault in the Opposition to Defendants' Motion for Summary Judgment. See Opp'n 4, ECF No. 27 (labeling this claim as "Assault and Extortion," and appearing to argue that these defendants had reason to question Anderson's professionalism).

failed to demonstrate that defendants had actual or constructive knowledge that their subordinate—Anderson—was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to De'Lonta at any time before the sexual assault, De'Lonta has not demonstrated that they are liable for the sexual assault. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Furthermore, the defendants are not liable for their failure to terminate Sheree Anderson's employment after the assault because the evidence shows that the defendants tried to keep Anderson separated from De'Lonta once they were aware that inappropriate contact had occurred, and that Anderson was terminated within three weeks of the beginning of the relevant investigation.

Finally, De'Lonta has failed to demonstrate that defendant Pearson is liable for failure to provide medical treatment because De'Lonta does not show that Pearson was personally aware that the mental health treatment De'Lonta was receiving was not addressing her stress and anxiety relating to the sexual assault, nor does she claim that Pearson was personally involved in the alleged violations. Where, as here, a plaintiff has been provided with access to a mental health professional, a defendant who is not himself a mental health professional has not exhibited deliberate indifference to the plaintiff's medical needs. See Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Therefore, the defendants are entitled to judgment as a matter of law, and the Motion for Summary Judgment must be granted.

1. Sexual Assault and Failure to Remove Sheree Anderson

De'Lonta asserts that defendants Pearson and Scott are liable for the assault by Sheree

Anderson under the theory of supervisory liability.[8] See Opp'n 6, ECF No. 27. Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. See Shaw, 13 F.3d at 798 (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. at 798 (quoting Slakan, 737 F.2d at 376). In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

De'Lonta offers no facts demonstrating that defendants Scott or Pearson had actual or constructive knowledge that their subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to De'Lonta. It is undisputed that De'Lonta did not report Anderson's inappropriate behavior until after the assault occurred. See Am. Compl. 6, ECF No. 10. In fact, the undisputed evidence shows that the alleged assault occurred on March 11, 2009 and Sheree Anderson was terminated from employment on March 31, 2009, as a result

---

[8] Because service on named defendant Sheree Anderson could not be effected, as discussed supra, she is not a party to this action, and De'Lonta's claim that Anderson was directly responsible for the alleged sexual assault accordingly is subject to dismissal.

of the investigation of De'Lonta's claims. See Brief in Support 4, ECF No. 21. The evidence further shows that while the investigation was ongoing, the defendants tried to keep Anderson separated from De'Lonta after De'Lonta first raised the issue of their inappropriate contacts. See Brief in Support 6, ECF No. 21 (explaining that Anderson was reassigned to "duties that would not ordinarily cause her to come into contact with De'Lonta.").

De'Lonta has thus failed to show that the defendants violated her rights under the Eighth and Fourteenth Amendments. She has failed to show that defendants are liable to her in their supervisory capacities for the sexual assault by Sheree Anderson because the undisputed facts show that defendants were not aware that Anderson had behaved inappropriately until after the assault had occurred. De'Lonta has also failed to show that the defendants are liable for her for failing to terminate Anderson after the assault occurred because the undisputed facts show that the defendants tried to keep Anderson away from De'Lonta while the investigation was underway. Furthermore, the record indicates that the defendants took prompt steps to remove Anderson, who was terminated within three weeks of the initiation of the investigation. Therefore, the defendants are entitled to judgment as a matter of law, and their Motion for Summary Judgment must be granted on this claim.

2. Failure to Provide Treatment

De'Lonta, through counsel, plainly states that her second claim against defendant Eddie L. Pearson "does not indicate supervisory liability for Anderson's actions, but rather the denial of necessary treatment for an inmate who was a) known to all staff and the warden to have emotional problems related to her Gender Identity Disorder and who b) stated unequivocally in her complaint filings that she was having 'extreme difficulty coping.'" See Opp'n 4-5, ECF No.

27. Because De'Lonta has not alleged facts that support her claim that defendant Eddie L. Pearson has violated her rights under the Eighth Amendment by failing to give her the mental health treatment she wishes to receive, this claim is without merit.

Although federal courts are generally reluctant to interfere with the daily operation of penal institutions, they have required prisons to provide adequate mental health services. See Bowring, 551 F.2d at 47. Specifically, a prison inmate is entitled to psychological or psychiatric treatment "if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." See id. at 47-48 (recognizing that the right to such treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."). Nevertheless, "[t]he courts will not intervene upon allegations of mere negligence, mistake or difference of opinion," which means that a plaintiff only states a cause of action if she alleges "deliberate indifference to [her] continued health and well-being." See id. (citations omitted) (noting that "courts are ill-equipped to prescribe the techniques of treatment, [but] this does not alter the fact that in many cases treatment is obviously called for and is available in some form."). Finally, the right to psychological or psychiatric treatment only exists if the requisite form of mental health illness exists. See id. at 48-49.

Here, De'Lonta asserts that her rights under the Eighth Amendment were violated because she should have been given psychological counseling to help her cope with the stress and anxiety arising from being sexually assaulted, and no such mental health services were

provided. See Opp'n 4-5, ECF No. 27. However, De'Lonta does not dispute that she met with psychologist J. Porterfield on at least ten occasions after the sexual assault occurred. See generally Porterfield Aff., ECF No. 30-1. The fact that De'Lonta thus had regular meetings with Porterfield during the relevant time period demonstrates that defendant Pearson has not exhibited "deliberate indifference to [her] continued health and well-being." See Bowring, 551 F.2d at 47-48. De'Lonta does not claim that Pearson was personally aware that the mental health treatment she was receiving was not addressing her stress and anxiety relating to the sexual assault, nor does she claim that Pearson was personally involved in the alleged violations. Because the undisputed facts show both that De'Lonta did receive mental health treatment from a psychologist and that Pearson was personally unaware that this treatment was insufficient, De'Lonta has failed to show that Pearson demonstrated deliberate indifference to her mental health needs. Accordingly, Pearson is entitled to judgment as a matter of law as to the claim of failure to provide mental health treatment, and the Motion for Summary Judgment must be granted on this claim.

### IV. Conclusion

For the above stated reasons, defendants' Motion for Summary Judgment must be granted, and summary final judgment must be entered in their favor. An appropriate Order and judgment shall issue.

Entered this 24th day of February 2011.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge